1  STEPHEN YAGMAN (SBN 69737)
   filing@yagmanlaw.net
2  (for filings only)
   YAGMAN + REICHMANN, LLP
3  333 Washington Boulevard
   Venice Beach, California 90292-5152
4  (310)452-3200

5  Presented on behalf of Plaintiff and
   Class Representative D. JACOBS
6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11

12 | PEOPLE OF CITY OF LOS
   | ANGELES WHO ARE UN-HOUSED,
13 | AS A CLASS REPRESENTED BY D.          COMPLAINT
   | JACOBS, as representative of a class of
14 | unhoused persons who reside and resided    (To Address City of Los Angeles-
   | in the streets and on the sidewalks of the   Practiced, Negative Eugenics¹ and
15 | City of Los Angeles,                        Nazi-Like Conduct, Against Poor
   |                                             People, Civil Rights Violations, and
16 |                 Plaintiff,                          Damages)

17 |                   v.

18 | ERIC MICHAEL GARCETTI, PAUL
   | KREKORIAN, ROBERT                    CLASS ACTION ALLEGATIONS
19 | BLUMENFIELD, MONICA
   | RODRIGUEZ, MARQUEECE-
20 | HARRIS-DAWSON, MARK RIDLEY-
   | THOMAS, JOHN LEE, MITCH
21 | O'FARRELL, KEVIN DE LEON,
   | MONIQUE CONTRERAS, and ONE
22 | HUNDRED UNKNOWN NAMED
   | DEFENDANTS, 1-100,
23 |                                                 JURY DEMAND
   |                 Defendants.
24

25

26

27

28 ¹ Eugenics is the mildest term that could be used to describe defendants' wrongful
   conduct: both quasi-ethnic cleansing and quasi-genocide accurately could be used.

                                 1

Plaintiff makes the following allegations, on behalf of himself and of putative class members, in support of the this complaint, and to redress and to punish defendants' Nazi-Like and fascistic, wrongful conduct, in harassing him by preventing and punishing him for sleeping on a Venice sidewalk, and seizing, retaining, and refusing to return to him, his personal property, in which he lived and other personal items.

## JURISDICTION, PARTIES, AND VENUE

1. Plaintiff, **D. JACOBS**, asserts federal claims, under 42 U.S.C. § 1983 (civil rights), against defendants, subject matter jurisdiction lies pursuant to 28 U.S.C. § 1331 of these federal claims.

2. The matters that are the bases for this action occurred in Los Angeles County, California, and in the City of Los Angeles, and therefore venue lies in the United States District Court for the Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

3. Plaintiff is a member of the class of un-housed persons[2] who lived or live

[2] Federal law defines the terms "homeless" or "homeless individual" or "homeless person" to include:

**(1)** an individual or family who lacks a fixed, regular, and adequate nighttime residence;

**(2)** an individual or family with a primary nighttime residence that is a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings, including a car, park, abandoned building, bus or train station, airport, or camping ground;

**(3)** an individual or family living in a supervised publicly or privately operated shelter designated to provide temporary living arrangements (including hotels and motels paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, congregate shelters, and transitional housing);

**(4)** an individual who resided in a shelter or place not meant for human habitation and who is exiting an institution where he or she temporarily resided;

**(5)** an individual or family who--

**(A)** will imminently lose their housing, including housing they own, rent, or live in without paying rent, are sharing with others, and rooms in hotels or motels not paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, as evidenced by--

**(i)** a court order resulting from an eviction action that notifies the individual or family that they must leave within 14 days;

**(ii)** the individual or family having a primary nighttime residence that is a room in a hotel or motel and where they lack the resources necessary to reside there for more than 14 days; or

**(iii)** credible evidence indicating that the owner or renter of the housing will not allow the individual or family to stay for more than 14 days, and any oral statement from an individual or family seeking homeless assistance that is found to be credible shall be considered credible evidence for purposes of this clause;

**(B)** has no subsequent residence identified; and

**(C)** lacks the resources or support networks needed to obtain other permanent housing . . . .

on the streets and sidewalks of the City of Los Angeles, and who number in the tens of thousands (about 43,000), without shelter, and whose property, including their tents, and belongings were stolen and never returned by defendants; and defendants are **ERIC MICHAEL GARCETTI**, City of Los Angeles' mayor; **PAUL KREKORIAN, ROBERT BLUMENFIELD, MONICA RODRIGUEZ, MARQUEECE-HARRIS-DAWSON, MARK RIDLEY-THOMAS, JOHN LEE, MITCH O'FARRELL, KEVIN DE LEON**, who are City of Los Angeles City Council members; **MONIQUE CONTRERAS**; and the **UNKNOWN NAMED DEFENDANTS**, whose true identities presently are unknown, who participated in the wrongful acts alleged hereinbelow, and whose conduct is culpable, and whose unknown names will be replaced by their true identities when those true identities are learned, or are persons and/or entities whose true names presently are unknown, and who engaged in some conduct that is culpable with respect to plaintiff, as set forth hereinbelow. All defendants engaged in the same conduct by participating in, facilitating, and making the decisions to enact and to enforce anti-unhoused ordinances, to post Zone ordinances signs as set forth hereinbelow, and who, specifically in this action, were responsible for

4. Defendants each and all are sued in their individual capacities, and, for the claims made under *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 657 (1978), all defendants are sued in their official capacities only.

5. Plaintiff resides on a sidewalk on Main Street, in Venice Beach, California.

6. City of Los Angeles Municipal Code § 41.18 provides as follows:

42 U.S.C. §11302(a). Plaintiff and class members are within the definition of this section, and choose to call themselves "un-housed," because "homeless" has become a pejorative term.

## SEC. 41.18. SITTING, LYING, OR SLEEPING OR STORING, USING, MAINTAINING, OR PLACING PERSONAL PROPERTY IN THE PUBLIC RIGHT-OF-WAY.

(Title and Section amended by Ord. No. 187,127, Eff. 9/3/21.)

(a)  No person shall obstruct a street, sidewalk, or other public right-of-way:

(1)  by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, in a manner that impedes passage, as provided by the Americans with Disabilities Act of 1990, Pub. L., No. 101-336, 104 Stat. 328 (1990), as amended from time to time;

(2)  by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, within ten feet of any operational or utilizable driveway or loading dock;

(3)  by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, within five feet of any operational or utilizable building entrance or exit;

(4)  by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, within two feet of any fire hydrant, fire plug, or other fire department connection;

(5)  by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, within the public right-of-way in a manner that obstructs or unreasonably interferes with the use of the right-of-way for any activity for which the City has issued a permit.

(b)  No person shall obstruct any portion of any street or other public right-of-way open to use by motor vehicles, or any portion of a bike lane, bike path, or other public right-of-way open to use by bicycles, by sitting, lying, or sleeping, or by storing, using, maintaining, or placing personal property, anywhere within the street, bike lane, bike path, or other public right-of-way, as specified.

(c)  Except as limited by Subsection (d), no person shall:

(1)  sit, lie, sleep, or store, use, maintain, or place personal property, in or upon any street, sidewalk, or other public right-of-way within the distance stated on the

posted signage (up to a maximum of 500 feet) of a property designated as a sensitive use. For a property to be designated as a "sensitive use", the property must be a Public Park, or Public Library, as those terms are defined in Section 105.01 of this Code; (Amended by Ord. No. 187,586, Eff. 9/18/22.)

(2)  sit, lie, sleep, or store, use, maintain, or place personal property, in or upon any street, sidewalk, or other public right-of-way within the distance stated on the posted signage (up to a maximum of 500 feet) of a designated overpass, underpass, freeway ramp, tunnel, bridge, pedestrian bridge, subway, wash, spreading ground, or active railway, where the City Council determines, in the designating resolution, that the public health, safety, or welfare is served by the prohibition, including, without limitation, by finding that sleeping or lodging within the stated proximity to the designated area is unhealthy, unsafe, or incompatible with safe passage;

(3)  sit, lie, sleep, or store, use, maintain, or place personal property, in or upon any street, sidewalk, or other public right-of-way, within the distance stated on the posted signage (up to a maximum of 1,000 feet) of a designated facility, opened after January 1, 2018, that provides shelter, safe sleeping, or safe parking to homeless persons, or that serves as a homeless services navigation center;

(4)  sit, lie, sleep, or store, use, maintain, or place personal property, in or upon any street, sidewalk, or other public right-of-way that has been posted with signage prohibiting sitting, lying, sleeping, or storing, using, maintaining, or placing personal property. In order to designate a section of street, sidewalk, or other public right-of-way as prohibited under this subdivision, the City Council shall determine, in a designating resolution and based on specific documentation, that the circumstances of continued sitting, sleeping, lying, storing personal property, or otherwise obstructing the public right-of-way at that location poses a particular and ongoing threat to public health or safety. Such circumstances may include, but are not limited to: (i) the death or serious bodily injury of any person at the location due to a hazardous condition; (ii) repeated serious or violent crimes, including human trafficking, at the location; or (iii) the occurrence of fires that resulted in a fire department response to the location. For each such location, a prohibition pursuant to this subdivision shall be effective for a period of time specified in the resolution, but not to exceed one year.

(d)  No person shall be found to be in violation of any prohibition set forth in Subsection (c), unless and until: (i) the City Council has taken action, by

resolution, to designate a specified area or areas for enforcement against sitting, lying, sleeping, or storing, using, maintaining, or placing personal property, or otherwise obstructing the public right-of-way; (ii) the City has posted signage at the designated area or areas set forth in the resolution, with such signage including reference to any required findings adopted in the resolution, and giving notice of the date after which no sitting, lying, sleeping, or storing, using, maintaining, or placing personal property, or otherwise obstructing the public right-of-way will be allowed; and (iii) at least 14 calendar days have passed from the date on which the signage is posted at the designated area or areas.

(e)  No person shall sit, lie, sleep, or store, use, maintain, or place personal property, in or upon any street, sidewalk, or other public property within 500 feet of a School or Day Care Center as those terms are defined in Section 105.01 of this Code. A violation of this subsection is governed by Section 41.18(f) of this Code. (Added by Ord. No. 187,586, Eff. 9/18/22.)

(f)  Violations of this section involving a person who willfully resists, delays, or obstructs a City employee from enforcing this section or who willfully refuses to comply after being requested to do so by an authorized City employee shall be subject to the penalties set forth in Los Angeles Municipal Code (LAMC) Section 11.00. All other violations of this section shall be enforceable only as infractions pursuant to LAMC 11.00(m) or issuance of a citation pursuant to City's Administrative Citation Enforcement Program pursuant to LAMC Section 11.2.01 *et seq*.

7.  Defendants and each of them play and played some material role in the acts and/or omissions alleged hereinbelow and in the setting of policies and enforcement of City of Los Angeles ordinances, and/or in running and administering the City of Los Angeles Department of Public Works, and Department of Public Works Bureau of Sanitation and Environment, and/or in the harassment of the un-housed people, like the plaintiff, who live on the streets, and in the confiscations, takings and stealings of their property, and in the wrongful conduct set forth hereinbelow.

## ALLEGATIONS COMMON TO EACH COUNT

8.  Each and every allegation set forth in each and every averment herein

is incorporated by this reference, in each and every other averment and allegation of this pleading.

9. All acts and/or omissions perpetrated and/or engaged in by each defendant in their individual capacities were done maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, with evil motive and/or intent, in disregard of the rights of plaintiff and class members, and in clear violation of the federal Constitution and of the California Constitution, and of controlling federal law, both statutory and common law, as set forth by both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit.

10. The Eighth and Fourteenth Amendment to the United States to the United States Constitution prohibit the threatening of and/or imposition of any penalties for merely being on, including sitting, sleeping, lying, on public property, for un-housed human beings who cannot obtain permanent shelter. The Fourth Amendment prohibits the seizures of unhoused persons' property. *See* Doc. 103 in No. 2:21-cv-06003-DOC(KESx), whose contents are incorporated herein.

11. Sitting, lying, and sleeping are defined as acts or conditions that are universal and unavoidable consequences of being human, and that are involuntary. Un-housed persons' ownership of their property also is a consequence of being human.

12. Human beings are biologically compelled to rest, whether by sitting, lying, or sleeping.

13. As a result, just as governments may not criminalize the state of being "homeless in public places," government may not "criminalize conduct that is an unavoidable consequence of being unhoused -- namely sitting, lying, or sleeping on the streets," or owning property, including shelter, while existing on the streets.

14. So long as there is a greater number of homeless individuals in the City of Los Angeles than the number of available beds in its shelters, which has for many years been, and presently is the case, the City of Los Angeles and defendants mayor, council members, commissioners, and administrators of the Department of Public Works Bureau of Sanitation and Environment, cannot threaten, extort, penalize, or prohibit, or threaten or attempt to do so, unhoused individuals, for involuntarily being in, sitting, lying, and sleeping on public property, or confiscating their property.

15. The City official defendants have been told this over, and over, and over, for at least 16 years, since 2006, in *Jones v. City of Los Angeles*, 444 F.3d 118 (9th Cir. 2006), and again in 2014, in *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014), and yet again in 2019, in *Martin v. City of Boise*, 920 F.3d 584, 604 (9th Cir. 2019), all of whose contents are incorporated herein by this reference, and in which in *Martin* the City of Los Angeles and defendants petitioned the United States Supreme Court for a writ of certiorari, which was denied, and which City Attorney Michael N. Feuer contended was done so that the Court could "clarify" the Ninth Circuit's ruling.

16. But none of these precedential rulings, all of which were and are binding on the City and all of its officials and employees, has had any effect on the officials' wrongful behavior. *See* "Using new law, L.A. City Council [all defendants herein] bans homeless encampments at 54 spots," detailing that just five days before a complaint in one of the *Finley/Lockett* actions was filed, on Oct. 24, 2021, that on Oct. 19, 2021, defendants herein, the mayor, 12 of the City council members, and defendant and Feuer, yet again enacted ordinances and counseled on the enactment of ordinances, to ban homelessness, the council members by a 12-2 vote.

17. As long as there is no option of sleeping indoors, and there is not, the City government and defendants may not criminalize indigent, unhoused, people

for being outdoors, parking the vehicles in which they exist on City streets, sleeping outdoors, on public property, based on the false premise they these human beings had any choice in the matter.

18. Resisting the need to be somewhere, to eat, to sleep, or to engage in other life-sustaining activities is impossible. Avoiding public places, like sidewalks, when engaging in these otherwise innocent conducts is impossible: as long as the unhoused, street-sleeping plaintiff and class members do not have a place where they can lawfully be, the challenged ordinance, as applied to them, effectively punishes them for something for which they may not be convicted under the Eighth Amendment, and hence, the Fourteenth Amendment, to wit, being, sitting, lying down, sleeping, eating, and other innocent conduct, so that the challenged ordinance, both on its face and as applied against the homeless, are unconstitutional and unconstitutionally vague and overbroad.

19. The use of the City's ordinance to criminalize the simple acts of being outside on public property and sleeping on public property, when one has nowhere else she or he can be, they penalize the condition of being a human being, and, in that sense are prohibited status crimes.

20. A municipality and its officials may not lawfully or constitutionally criminalize such behavior, consistently with the Eighth Amendment, and hence the Fourteenth Amendment, when no sleeping spaces are practically available in a sufficient number of places and/or shelters.

21. So long as there is a greater number of unhoused individuals in the City of Los Angeles than the number of available beds in shelters, for the unhoused, City of Los Angeles and defendants may not legally enforce ordinances against unhoused individuals, for involuntarily being, sitting, lying, and/or sleeping in any public place, and yet they stubbornly enforce their ordinances.

22. Ordinances violate the Eighth Amendment, and hence the Fourteenth Amendment, insofar as they impose criminal sanctions against unhoused

1  individuals, for being and/or lying down and/or sleeping outdoors, or parking their
2  vehicles where all others legally are permitted to park, on public property, when
3  no alternative shelter is available to them. *Martin*, as well as *Jones*, clearly and
4  unequivocally state this, and it is binding on all defendants, who refuse to obey it,
5  even though it incontrovertibly is the controlling and binding law.

6      23. There is no rational basis to prohibit or to punish homelessness, *see*
7  Franz Kafka, *Before the Law*, in *Kafka: The Complete Stories* (Schocken, 1971)
8  ("this gate was made only for you. I am now going to shut it."), at 4; *The Problem*
9  *of Our Laws*, in *The Complete Stories*, at 437 ("the laws were made to the
10  advantage of the nobles from the very beginning, they themselves are above the
11  laws, and that seems to be why the laws were entrusted exclusively into their
12  hands . . . ."), and persons who are similarly-situation must be treated alike, and
13  defendants have acted with an intent and purpose based on plaintiff's and class
14  members' membership in the class of the homeless, in violation of the Equal
15  Protection Clause of the Fourteenth Amendment, and also have enforced
16  selectively their laws against the homeless and not against others who are not
17  homeless, all with no rational basis for such a discriminatory ordinance and its
18  enforcement, as a pretext and with an impermissible motive.

19      24. To be clear, defendants' ordinance provides for and creates the false
20  appearance of a proper function, when in fact and in reality it serves as a fictitious
21  means for defendants to rid the City's streets and sidewalks of the unhoused, and
22  to confiscate their property, as a means to just make them go away or disappear:
23  police and sanitation workers keep the homeless population off the sidewalks and
24  streets and prevent them from sitting or lying down on public sidewalks and
25  streets, as opposed to housed individuals, and this serves no legitimate
26  government purpose, and is an attempt to sweep homeless people off the streets
27  without providing them adequate shelter. The ordinance bans homeless people
28  from ever sitting or lying down when the City has left them no alternative, as they

1   lack any adequate shelter, housing, and places to rest or to go to the bathroom or

2   to wash-up, all of which the City and its officials could provide, but yet they

3   stubbornly refuse to provide, so that the selective ordinance against the homeless

4   is based on an improper motive: as Bob Dylan once sang, "ban the bums." (Bob

5   Dylan's "115th Dream," 1965),[3] the higher-up defendants use the Sanitation

6   Department workers to clear away (steal) the unhoused's belongings, similarly to

7   the way the Nazis used Jewish people as straw bosses[4] in the Nazi concentration

8   and extermination camps, and the LAPD defendants, enforce this by "standing

9   guard," like Heinrich Himmler's[5] *Geheime Staatspolizei* (the Gestapo), while the

10  Sanitation workers confiscate and steal the unhoused's property, taking it far away

11  for "storage," to a place that the unhoused cannot reasonably reach, and then the

12  property is thrown out. This is the principal means by which defendants attempt to

13  rid the City of the unhoused, making it impossible for them to exist at all, with no

14

15  [3] Full lyric: "I went to get some help, I walked by a Guernsey cow, Who directed

16  me down to the Bowery slums, Where people carried signs around sayin' 'Ban the
    bums,' I jumped right into line sayin' 'I hope that I'm not late,' When I realized I

17  hadn't eaten for five days straight.'" (The Bowery is a north-south street on the east

18  side of lower Manhattan, on which homeless people historically always have

19  lived, though it now has become partly gentrified. It was the relentless object of
    former-Mayor Rudolph W. Giuliani's (1993-2001) (yet another fascist moron) so-

20  called "quality of life" clean-up efforts, to ban the omni-present "squeegie men,"

21  who would try to earn money by cleaning the windshields of cars who stopped for

22  the traffic lights, at the intersection of Bowery and Houston Streets.)

23  [4] A worker who has some responsibility, but little authority.

24
25  [5] The head of the *Schutzstaffel* (German for "Protection Squads," or "Protection
    Echelon," the "SS," self-described political soldiers) and the Third Reich's chief of

26  police, from 1936 until his dismissal on May 6, 1945, just 17 days before his

27  suicide on May 23, 1945, as a British prisoner, at an interrogation camp near
    Lüneberg, Germany.

28

tents for shelter, no sleeping gear, and often no personal belongings at all. It is inhumane, horrible, and brazenly fascistic.[6]

25.  All of these actions by defendants were done intentionally, in concert, they are coordinated, conspiratorial, and were both attempts to do and the doing of things that constitute violations under both state and federal law, and which obstruct justice, all as set forth more fully herein, and defendants each and all had a meeting of the minds (used only in its legal sense) to do these things.

26.  Defendants' actions are a form of government-sanctioned eugenics[7], to alter, by government edict -- here, a parking an ordinance, a specific population that is disfavored by society and by government -- the unhoused, like the Romani, or Roma peoples, in England and Continental Europe.

[6] Named for the "fasces," which was a bound bundle of wooden (often birch) rods, often including an axe, with its blade emerging, which was an Italian symbol that had its origin in the Etruscan civilization, and was passed on to ancient Rome, where it symbolized a magistrate's power and jurisdiction. Often, it is used as a representation of magisterial or collective power, law, and governance, and in Roman Times was held up, by a lector, as it was carried at front of processions in which a public official was walking. It became the emblem of Mussolini's National Fascist Party, which took its name from the emblem. Exhibit 1 hereto. Ironically, it is present on the reverse of the U.S. Mercury dime coin and behind the podium in the United States House of Representatives (whose authors probably were too ignorant to know its very negative significance).

[7] "Eugenics" (/juːˈdʒɛnɪks/ yoo-JEN-iks; from Greek εὖ- "good" and γενής "come into being, growing") is a set of beliefs and practices that aim to improve the genetic quality of a human population, historically, and here, by excluding people and and/or groups of people judged to be inferior, or promoting those judged to be superior. In recent years, the term has seen a revival in bioethical discussions, on the usage of new technologies, such as CRISPR (a gene therapy technique) and genetic screening, with a heated debate on whether these technologies should be called eugenics or not.

27.  In general, eugenics is the practice of arranging a human population to increase or to decrease the occurrence of characteristics regarded as desirable or undesirable. Here, poverty -- the state of being poor -- is regarded by defendants as being an undesirable characteristic, and defendants' wrongful conduct as alleged herein is designed to decrease the visible manifestations and occurrences of this characteristic in public places. It is akin to the Nazis' and the *Geheime Staatspolizei*'s treatment of the Romani population, and the same treatment of the Romani by many countries in modern-day Europe.

28.  The American eugenics movement was formed during the late Nineteenth Century and continued as late as the 1940s, and to a much lesser extent into the late 20th Century.[8]  (Negative eugenics did not originate with the Nazis, as commonly is believed to the case: rather, *the Nazis got it from the Americans*.) The American eugenics movement embraced negative eugenics, as a purported method of improving the human race, and was increasingly discredited as unscientific and racially-biased during the 20th Century, especially after the adoption of its doctrines by the Nazis (in order to justify their treatment of Jews, Romani, disabled people, the mentally ill, and other minority groups).  Incredibly,

[8]  Many Americans, especially those born after the WWII, "Baby Boomers," and post-Baby Boomer generations, incorrectly believe that Stanford Univ. Professor William Bradford Shockley, Jr. was the father of eugenics. He was not. In the 1970s, Shockley contended that a higher rate of reproduction among the less intelligent was having a dysgenic effect, and that a drop in average intelligence ultimately would lead to a decline in civilization. He also claimed that blacks were genetically inferior to whites, on an intellectual level -- a view held by the National Football League until June 2021, as a means for denying brain-damaged, Black, former players equal compensation to White players, in the brain damage class action settlement. (Shockley was a candidate for the Republican nomination in the 1982 United States Senate election in California. He ran on a single-issue platform of highlighting the "dysgenic threat" of some racial groups, including African-Americans, to American society.)

eugenics was *not* invented by the Nazis, but rather was first employed by "scientists" in New York, principally Charles Benedict Davenport, a Brooklyn-born, Harvard biology professor, and miscegenationist, who believed that race determined behavior. That is, the Nazis got eugenics from the Americans. It is important to recognize that, in America, eugenics was and is a movement used to reduce an undesired population -- as defendants here use their City of Los Angeles, subject ordinance to push racist, classist, and ableist ideas, rather than a movement that explicitly worked toward the improvement of the human race, against unhoused persons, who are "an undesired population." *See also,* involuntary sterilization, lobotomization, and William Sheldon's somatotyping, all also conceived and pioneered in America. The English-language term "eugenics" translates to "well-born," from the Greek word, "*eugenes*." Eugenics reinforces the prejudices of the time, by deeming those with desirable genetic traits, such as Whiteness, of higher economic status, and healthy, when, on the other hand, those with undesirable traits are identified as non-White, of lower economic status, or physically or mentally disabled.

29.   Defendants are practicing modern-day eugenics against plaintiff and class members. *See also LA Alliance for Human Rights v. City of Los Angeles*, 2:20-cv-02291-DOC-(KESx), Doc. 227 (04/20/21).

30. Plaintiff and class members are un-housed persons who live in the streets of Los Angeles, on sidewalks and elsewhere, and whose property was confiscated, and also were subjected to the seizing and throwing away their belongings.

31. The subject ordinance sometimes is colloquially known as a "Zone" ordinance, because it establishes zones from which the unhoused are sought to be and are expelled.

32. Under the pretenses of "Health Hazard Removal" and "Comprehensive Street & Sidewalk Cleaning," other Zone ordinances' thinly-veiled purpose, and their actual effect, is to get unhoused persons off the streets and sidewalks of the City of Los Angeles, and out of everyone else's sight.

33. They dictate "Zone Boundaries," displayed as maps, and then dictate that, in those zones, there will be "Health Hazard Removal" on "Monday, Tuesday, Wednesday, & Friday," during which times City employees from the Sanitation Bureau, backed-up with thug-muscle by LAPD bullies, remove unhoused persons' belongings, including tents, sleeping gear, and other personal items, and that, on "Every Thursday, Between 7 am and 3pm" "During comprehensive cleaning no one will be allowed to remain on a sidewalk." Thus, under this type of ordinance, from Mondays through Fridays, City officials, sanitation workers, and thug-LAPD cops manage to keep all unhoused persons off the sidewalks and streets, and those who remain have all of their belongings stolen by the City and its employees.

34. Truly amazingly, as to any of the § 41.18 and the Zone ordinances that are not in Downtown Los Angeles, an un-housed person would have to travel to a City-operated facility with the Orwellian name of "The Bin," located at 507 Towne Avenue, in zip code 90013, on Skid Row, to retrieve his or her stolen belongings, which is impossible to do.

35. In October, 2022, plaintiff was issued a citation to appear in a court in Beverly Hills, pursuant to § 41.18 by defendant Contreras, for living on the sidewalk on Main Street in Venice, and this violated plaintiff's constitutional rights, as set forth hereinbelow.

36. Previously, in 2021, plaintiff's tent in which he resided and all of his personal belongings were stolen under the supervision of defendant Contreras, pursuant to § 41.18.

37.-99. Reserved.

16

## COUNT 1
### (Fourteenth Amendment, Equal Protection Violations, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

100. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits state action that discriminates against a suspect class of persons, and makes a state governmental unit responsible for the equal protection of its citizens, and provides that "nor shall any state . . . deny to any person within its jurisdiction the equal protection of the laws.

100a. The Equal Protection Clause contains the right of the people to be exempt from unfriendly legislation, exemption from legal discriminations that imply an inferiority in civil society, and which lessen the enjoyment of rights which others enjoy.

100b. Defendants' subject ordinances violated plaintiff's and class members' right to equal protection of the laws because it is legislation that is unfriendly to them, since it is aimed *only* at them and at no other class of persons, it subjects only them to legal discrimination -- indeed, it cannot be contested that it is only them against whom it discriminated, it implies their inferiority in civil society, and it lessens their enjoyment of rights which other human beings enjoy, and it caused the towing, impounding, and refusing to return plaintiff's RV to plaintiff.

100c. The subject ordinances create a near-blanket ban on sitting, lying, or sleeping in public and require homeless people to remain standing, which deprives them of the equal protection of the laws.

## COUNT 2
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

101. Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being,

maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, and was the moving force, for an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs' and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

//

## COUNT 3
### (Conspiracy, against all defendants, in both their individual and official capacities 42 U.S.C. § 1983)

102. All defendants and each of them understood and agreed, and had a meeting of the minds, that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, here prohibiting plaintiff and class members from being on public property, and confiscating and not returning plaintiff's and class members' stolen property.

## COUNT 4
### (Fourteenth Amendment, Due Process Violations, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

103. The Due Process Clause of the U.S. Constitution provides "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

103a.  The defendants' behavior alleged herein is so egregious, so outrageous, that it fairly may be described as shocking to the conscience, and also it is arbitrary and capricious action by the government: it is an exercise of power without any reasonable justification or legitimate governmental purpose: plain and simple, it is government bullying of those who are least able to defend themselves; it violates the decencies of civilized conduct in a civilized society; it is brutal and offensive, and it does not comport with basic concepts of fair play and decency, so that it violates plaintiff's and class members' substantive due process rights, because it is the government using its vast power arbitrarily and oppressively. It deprives plaintiff and class members of property without due process of law, both procedurally and substantively.

103b. Defendants' conduct in enacting the anti-homeless ordinances and enforcing them against the homeless deprive the homeless of liberty and of property and thereby deny them both procedural and substantive due process of law under the Fourteenth Amendment Due Process Clause.

## COUNT 5
### (*Monell* Violations, against all defendants, against all defendants, in their official capacities 42 U.S.C. § 1983)

104. Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal

rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or
to take corrective action with respect to themselves and/or their personnel with
respect to the types of wrongful conduct alleged in this pleading, so that each one
of them is legally responsible for all of the injuries and/or damages sustained by
plaintiffs' and class members, pursuant to the principles set forth in *Monell v.
Dep't of Social Services* and its progeny. The enforcement of § 41.18 and the
Zone ordinances are specific policies that are unconstitutional, and which harm the
plaintiff and other homeless people.

## COUNT 6
**(Conspiracy, against all defendants, in both their individual and official
capacities, 42 U.S.C. § 1983)**

105. All defendants and each of them understood and agreed, and had a
meeting of the minds, that they all would act in combination in the manners
described hereinabove and then overt acts were undertaken to carry out their
schemes, both hereinabove and hereinbelow.

## COUNT 7
**(Fourteenth Amendment, Privileges and Immunities Abridgement Violations,
against all defendants, in both their individual and official capacities, 42
U.S.C. § 1983)**

106. The Privileges and Immunities Clause of the Fourteenth Amendment
provides that "No State shall make or enforce any law which shall abridge the
privileges and immunities of citizens of the United States."

106a. California Welfare & Institutions Code § 17000 provides that

> every city . . . shall relieve and support all incompetent, poor,
> indigent persons, and those incapacitated by age, disease, or
> accident, lawfully resident therein . . . .

106b. This state law provides the substance of a privilege and immunity
enjoyed under state law to plaintiffs' and class members, and defendants' conduct

violates plaintiff's and class members' Fourteenth Amendment privileges and immunities rights (and this as well violates plaintiffs' and class members' rights to both equal protection and to due process).

106c. Plaintiff Finley is a citizen of Texas.

## COUNT 8
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

107. Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 9
### (Conspiracy, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

108. All defendants and each of them understood and agreed, and had a meeting of the minds, that they all would act in combination in the manners

21

described hereinabove and then overt acts were undertaken to carry out their
schemes, both hereinabove and hereinbelow.

## COUNT 10

**(Eighth Amendment, Cruel and Unusual Punishments Infliction Violations,
against all defendants in both their individual and official capacities, 42
U.S.C. § 1983)**

109.  The Eighth Amendment Cruel and Unusual Punishment Clause
provides that "nor cruel and unusual punishments [may be] inflicted."

109a.  The Eighth Amendment's Cruel and Unusual Punishment Clause
prohibits the imposition, or threat to impose, penalties for sitting, or lying outside,
or parking a motor vehicle on a public street, by unhoused persons who cannot
obtain shelter, and whether these activities are defined as acts or conditions, they
are inseparable from status, they are universal and unavoidable consequences of
being human -- they are one and the same thing, and are involuntary conduct that
is inseparable from status, because human beings are biologically compelled to
rest, whether by sitting, lying, or sleeping, and all of these things must occur some
place, here in on sidewalks, on streets, and in vehicles that are banned by the
subject ordinances.

109b. The City of Los Angeles may not, but in fact it does, criminalize
and/or punish, threaten to punish, or attempt to punish the state of being unhoused
in public places, nor may it criminalize conduct that is an unavoidable
consequence of being unhoused.

109c.  As long as there is no option of sleeping indoors, defendants may not
criminalize indigent, unhoused persons for being outdoors, on public property,
like streets, on the false premise that that they had a choice in the matter.

109d.  Resisting the need to eat, sleep, or engage in other life-sustaining
activities, is unavoidable human activity.

109e.  Avoiding public streets when engaging in this otherwise innocent behavior also is impossible.

109f.  Unhoused persons may not be punished, without the punishment being cruel and unusual, because such persons may not be convicted under the Eighth Amendment for innocent conduct.

109g. Prohibiting or interfering with sleeping in a public place as applied to unhoused persons is unconstitutional, as is the taking away of their property and/or housing.

109h.  Here, defendants' application of their ordinances criminalizes conduct that is not criminal, and thus is unconstitutional.

109i.  Ordinances that prevent the use of public property as a temporary or permanent place of dwelling, lodging, or residence, for storage of personal belongings, for cooking, or using temporary structures -- is unconstitutional.

109j.  The subject ordinances and the conduct against plaintiff were and are aimed only at unhoused persons who live or who reside in the streets or on sidewalks, and, as such are unconstitutional.

109k. Section 41.18 criminalizes the state of being homeless.

**COUNT 11**
***(Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)**

110.  Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with

23

deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs' and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 12
**(Conspiracy, against all defendants, in their official capacities, 42 U.S.C. § 1983)**

111. All defendants and each of them understood and agreed, and had a meeting of the minds, that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

## COUNT 13
**(Eighth Amendment, Excessive Fines Imposition Violations, against all defendants in both their individual and official capacities, 42 U.S.C. § 1983)**

112. The Eighth Amendments' Excessive Fines Clause provides that "nor shall excessive fines [be] imposed."

112a. A fine is "excessive" if it is not proportional to and related to the gravity of the offense that it is designed to punish.

112b. The factors to be considered are the nature and extent of the underlying offense (none), whether the underlying offense is related to other illegal activities (none), whether other penalties may be imposed for the offense (none), and the extent of the harm caused by the offense (none). Here, defendants created and enforce ordinances to keep rich, habitated folks, who don't want to be bothered by seeing poor, unhoused folks who are forced to live on the sidewalks

and streets and in vehicles, and none of the four, evaluative factors is applicable, so that the subject ordinances' and their enforcement -- by confiscating and stealing unhoused persons' property, and thus depriving a poor person or her or his home, is Nazi-esque, unfounded, draconian, and unconstitutional.

112c. The horror of a rich person having to endure seeing a poor person at all is not a legitimate reason for enforcement of the subject ordinances. It is an ugly, neighborhood beautification project.

113d. Defendants' wrongful conduct, as set forth hereinabove is in violation of the Ninth Circuit's decision in *Pimentel v. City of Los Angeles*, 974 F.3d 917 (9th Cir. 2020) (Eighth Amendment's Excessive Fines Clause applies to municipal parking fines, notwithstanding that California changed its categorization of parking fines from criminal penalties to civil penalties), *as amended on denial of reh'g and reh'g en banc*, in which two of the City defendants' defense counsel herein, defendant Feuer and Gabriel Dermer, lost in the Ninth Circuit.

113e. Defendants theft and refusal to return plaintiff's property constitutes the imposition of an excessive fine.

113f. Section 41.18 criminalizes the condition of being homeless.

## COUNT 14
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

113. Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with

deliberate indifference to the constitutional or other federal rights of persons,
grossly negligently, with reckless disregard to constitutional or other federal
rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or
to take corrective action with respect to themselves and/or their personnel with
respect to the types of wrongful conduct alleged in this pleading, so that each one
of them is legally responsible for all of the injuries and/or damages sustained by
plaintiff and class members, pursuant to the principles set forth in *Monell v. Dep't
of Social Services* and its progeny.

## COUNT 15
**(Conspiracy, against all defendants, in their official capacities, 42 U.S.C. §
1983)**

114. All defendants and each of them understood and agreed, and had a
meeting of the minds, that they all would act in combination in the manners
described hereinabove and then overt acts were undertaken to carry out their
schemes, both hereinabove and hereinbelow.

115.-141. Reserved.

## COUNT 17
**(Fourth Amendment Violations Under § 1983, Against All Defendants In Both
Their Individual And Official Capacities)**

207. Plaintiff incorporates herein all of the material in the court's Nov. 11,
2021 minute order and, based thereon and on the allegations set forth hereinabove,
allege that defendants violated plaintiff's Fourth Amendment rights, and by virtue
thereof, are liable to plaintiff for both injunctive relief and in damages. The minute
order is consistent with other controlling Fourth Amendment jurisprudence.
Stealing plaintiff's property is a seizure, and "[a] seizure conducted without a
warrant is per se unreasonable under the Fourth Amendment—subject only to a
few specifically established and well delineated exceptions, and the burden is on
the Government to persuade the district court that a seizure comes under one of a

few specifically established exceptions to the warrant requirement." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) ("A seizure conducted without a warrant is '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.' *Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (internal quotation marks and citations omitted). The burden is on the Government to persuade the district court that a seizure comes "under one of a few specifically established exceptions to the warrant requirement.' *United States v. Huguez Ibarra,* 954 F.2d 546, 551 (9th Cir.1992).").

### COUNT 18
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

208. Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 19

### (Conspiracy, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

209. All defendants and each of them understood and agreed, and had a meeting of the minds, that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

210.-272.  Reserved.

### CLASS ACTION ALLEGATIONS

273. Plaintiff is a member of a class, whose defining characteristics are that he is an unhoused person who lived and lives on the streets and sidewalks of the City of Los Angeles, and whose personal property was stolen and never returned by City employees.

274. The class may contain about 43,000 people, and the class is so numerous so that joinder of all members is impracticable.

275. There are only common questions of fact and of law with respect to all class members of each class, who were prevented from existing at all and whose property was stolen, and who are in imminent jeopardy of being deprived of anywhere to exist at all, and whose members are in imminent jeopardy of being ousted from their habitations on the streets of the City of Los Angeles and their belongings, shelters, and property being stolen and/or taken away, to a place they physically are unable to reach, possibly to reclaim it.

276. The claims made by the representative party of the class, plaintiff, are typical of the claims of each class member.

277. The representative of the class, plaintiff, more than fairly, vigorously, and zealously will represent and adequately protect the interests of all class members, both themselves and through their zealous attorney.

28

278. Prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to class members, which would establish incompatible standards for parties opposing the classes, and defendants have acted and will continue to act on grounds generally applicable to every class member in both classes, and the class questions not only predominate but are the only questions that exist, and this action is the far superior manner to other available methods for fairly and efficiently adjudicating the controversies.

279. Specifically, the class members' interests in individually controlling the prosecution or defense in separate actions do not exist, and there are no anticipated difficulties in managing this class action, especially as to identification of the amount of damages, identification of class members, and providing actual notice to virtually all class members.

280. Therefore, this action is maintainable under F.R. Civ. P. Rule 23(a), & 23(b)(1)(A),(B)(1), (2), and (3).

281. There would appear to be no notice requirement as to (B)(1) & (2) classes, the nature of the notice to be provided to class members would be decided by the court, at the appropriate time.

**WHEREFORE**, plaintiff and class members request relief against each defendant as follows:

1. Compensatory damages for all violations, in sums in excess of $1,000,000.00, exclusive of costs and interest;

2. Punitive damages, in a sum to be determined by a jury, and as a percentage of the net worth of each defendant, in a sum sufficient to deter future misconduct, and not less than $1,000,000.00 per defendant;

3. Injunctive relief, according to law;

4. The costs of action and interest;

29

5. Attorneys' fees; and,

7. Such other relief as is just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues.

**YAGMAN + REICHMANN, LLP**

By:  /s/  Stephen Yagman
     **STEPHEN YAGMAN**

# EXHIBIT 1

