STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Attorneys for Plaintiffs and
Putative Class Members

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| **DAVID JACOBS,** *etc.*,<br><br>Plaintiffs,<br><br>v.<br><br>**ERIC MICHAEL GARCETTI**, *et al.*,<br><br>Defendants. | 2:22-cv-08010-DOC(KESx)<br><br>**REPLY ON MOTION FOR CLASS CERTIFICATION**<br><br>Mag. Judge Karen E. Scott |

## MEMORANDUM OF POINTS AND AUTHORITIES

Only one point in the opposition needs a reply, and that is the adequacy *vel non* of proposed class counsel. Plaintiffs adequately have briefed and met all of defendants' other points in opposition to the class certification motion in the motion itself and will not belabor them here. (They previously lost on the class certification issue in the *Finley* action, in which they did not raise the adequacy issue, *see infra*.)

The court, Judge Carter, has said all that needs to be said in its prior class certification order in *People of the City of Los Angeles Who Are Unhoused by Finley v. Garcetti* as to defendants' challenge herein of the adequacy of proposed class counsel. Judge Carter performed his "own analysis" as to the adequacy of proposed class counsel because (the same) defense counsel in that case did not challenge the adequacy of proposed class counsel:

> In its own analysis, moreover, the Court agrees that Plaintiffs' named representatives and counsel would be fair and adequate representatives. None of the named plaintiffs or proposed class counsel appear to have any conflict of interest. The Court also finds that Plaintiffs' counsel will vigorously prosecute this case. The Court therefore finds that the adequacy requirement of Rule 23(a)(4) is satisfied as to Plaintiffs' proposed representatives and counsel.
>
> . . .
>
> The Court CERTIFIES the Class to pursue class claims under Rule 23(b)(2), . . . [and] APPOINTS Yagman and Reichmann LLP as Class Counsel for the Proposed Class.

*People of the City of Los Angeles Who Are Unhoused v. Garcetti*, 2024 WL 3823235, *5 & *7 (C.D. Cal. July 31, 2024) (Judge Carter).

Plaintiffs' counsel assumes (without here taking a position) that defense counsel has prudential, procedural (but not constitutional), Rule 23 "standing" to challenge whom plaintiffs' class counsel should or will be. When evaluating that challenge, the court should take into account what Ninth Circuit judges Alex

Kozinski (author), Ferdinand F. Fernandez, and Pamela Ann Rymer (the latter two of whom presided over a number of district court trials prosecuted by plaintiffs' counsel herein) (all three of whom remained close professional friends of plaintiffs' counsel after his criminal conviction): "[C]ounsel, Stephen Yagman, has a formidable reputation as a plaintiff's advocate in police misconduct cases; defendants in such cases may find it advantageous to remove him as an opponent." *County of Los Angeles v. U.S. Dist. Ct. (Forsyth v. Block)*, 223 F.3d 990 (9th Cir. 2000). Of course, counsel for defendants would like to have someone other than Yagman + Reichmann, LLP and Stephen Yagman as their opponent. ("Please, anyone but him!)

Part of defense counsel's seeming basis for their challenge is that Mr. Yagman does not practice before the Ninth Circuit, so that *he* could not represent class members' interests there in any appeals to the Ninth Circuit. How this presently is pertinent or is any of defense counsel's business is unclear. The firm and Judge Reichmann certainly can represent the class before the Ninth Circuit, as set forth in the declarations of Joseph Reichmann and Stephen Yagman, both attached hereto. There are, at least, two other attorneys who, if Judge Reichmann were not to argue any appeal before the Ninth Circuit, would do so: Marion R. Yagman and Prof. Frances E. Olson. Yagman Decl. There is no basis for defendants' challenge to the adequacy of proposed class counsel. Notably, Judge Carter appointed the firm, as well as Mr. Yagman, as class counsel.

Mr. Yagman chooses to ignore defense counsel's other disparaging comments. He is a member, in good standing, of the California Bar and of this court's bar.

The certification motion should be reported and recommended to be granted, for the same reasons as the first certification in *People of the City of Los Angeles Who Are Unhoused v. Garcetti*, 2024 WL 3823235.

Respectfully submitted,

**YAGMAN + REICHMANN,LLP**

By: [signature]
**STEPHEN YAGMAN**

//

**DECLARATION OF STEPHEN YAGMAN**

I, Stephen Yagman, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am one of the attorneys for the plaintiff in this action.

2. I incorporate herein by this reference to render them admissible in evidence the facts set forth in the preceding memorandum, that I know to be true from my own, personal knowledge.

3. One of my partners, for 41 years, Marion R. Yagman, retired from the firm in 2021, but she continues as a legal consultant, is a member of the Bar of the Ninth Circuit, where she argued many cases, *see e.g. Choi v. Gaston*, 220 F.3d 1010 (9th Cir. 2000); *Abcarian v. Levine*, 972 F.3d 1019 (9th Cir. 2020), and is available to argue firm cases before the Ninth Circuit were Judge Reichmann (for some unknown reason) not to argue a firm case before the Ninth Circuit.

4. In an abundance of caution, I contacted my co-teacher (and close friend) at UCLA, eminent (feminist) law Professor Frances E. Olson, to inquire whether she would agree to argue firm cases before the Ninth Circuit, were Judge Reichmann not to argue a case, and she agreed to do so. Her page at UCLA is attached hereto.

STEPHEN YAGMAN 08/21/24

2024 WL 3823235
Only the Westlaw citation
is currently available.
United States District Court, C.D. California.

PEOPLE OF CITY OF LOS ANGELES WHO ARE UN-HOUSED
v.
ERIC MICHAEL GARCETTI ET AL.

Case No. **2** : **21** - **cv** - **06003** -DOC-KES
|
Filed 07/31/2024

**Attorneys and Law Firms**

Karlen Dubon, Courtroom Clerk, ATTORNEYS PRESENT FOR PLAINTIFF: None Present

Not Present, Court Reporter, ATTORNEYS PRESENT FOR DEFENDANT: None Present

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [358]**

THE HONORABLE DAVID O. CARTER, JUDGE

***1** Before the Court is Plaintiff D. Jacobs' Motion to Certify Class ("Motion" or "Mot.") (Dkt. 358). The Court finds the matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7–15. Having reviewed the briefing submitted by the parties, the Court **GRANTS IN PART** Plaintiffs' Motion.

## I. Background

The Court has discussed the facts at length in its Prior Order (Dkt. 319) and adopts those facts here. In brief, Plaintiffs are unhoused individuals challenging two Los Angeles City ordinances: § 56.11, which governs the storage of items in public, and § 56.12, which governs the placement of items that obstruct the public-right-of-way.

The Court previously denied Plaintiffs' Motion to Certify Class without prejudice on June 11, 2024 on the grounds that Plaintiffs failed to establish typicality and commonality, but granted Plaintiffs leave to file an amended motion. (Dkt. 357). Plaintiffs filed the instant Motion to Certify Class (Dkt. 358) on June 17, 2024. On June 24, 2024, City Defendants filed their Opposition (Dkt. 359). Plaintiffs submitted their Reply (Dkt. 361) on July 1, 2024.

## II. Legal Standard

Courts may certify a class action only if it satisfies all four requirements identified in Federal Rule of Civil Procedure 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Rule 23(a) requires the moving party to show the following:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*See* Fed. R. Civ. P. 23(a). These requirements are often referred to as "numerosity," "commonality," "typicality," and "adequacy." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

In addition to the four prerequisites under Rule 23(a), the moving party must also demonstrate that at least one of the requirements of Rule 23(b) is satisfied. Fed. R. Civ. P. 23(b). Here, Plaintiffs move for certification under all three Rule 23(b) categories. Plaintiffs seek certification for a damages class under Rule 23(b)(3) and for an injunctive relief class under either Rule 23(b)(1) or Rule 23(b)(2). Mot. at 12.

A class action may be maintained under Rule 23(b)(1) if "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). It may be maintained under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, it may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

***2** The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). However, "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A party seeking class certification must affirmatively demonstrate compliance with Rule 23—that is, the party "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.*

In resolving a class certification motion, it is inevitable that the trial court will touch on the merits of the movant's claims or defenses. *See Wal-Mart*, 564 U.S. at 351 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147,

160 (1982) ("[C]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action"). But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Accordingly, any consideration of the merits must be limited to those issues necessary to deciding whether to certify the class. *Id.* ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). "[W]hether class members could actually prevail on the merits of their claims is not a proper inquiry in determining the preliminary question of whether common questions exist." *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

A court that certifies a class generally must also appoint class counsel. Fed. R. Civ. P. 23(g)(1). Class counsel have a duty to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). When deciding whether class counsel is adequate to carry out this duty, courts must consider four factors:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Courts may also consider any other information relevant to "counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## III. Discussion

Plaintiffs asks the Court to certify the following Class:

> "All un-housed persons who reside in the City of Los Angeles and whose property and/or belongings have been subjected to and confiscated pursuant to City of Los Angeles ordinances §§ 56.11 and/or 56.12, and who have suffered the same injuries of having had their property and/or belongings taken, and who have been required to travel long distances across Los Angeles to retrieve their seized belongings, and who (A) have traveled long distances and retrieved their belongings, or (B) have not been able to travel those long distances and who thereby have lost their belongings."

Mot. at 15.[1]

1 Plaintiffs present slightly varied class definitions at different points in their motion. As this definition is the one Plaintiffs present in their Proposed Order, Dkt. 358-1, this definition is what the Court will use to address Plaintiffs' request for class certification.

*3 Plaintiffs seek to appoint Plaintiffs C. Finley, W. Lockett, D. Jacobs, and E. Serin as the named plaintiffs challenging the ordinances. Mot. at 6. As explained below, Plaintiffs have demonstrated that certification

challenge whom plaintiffs' class counsel should or will be. When evaluating that challenge, the court should take into account what Ninth Circuit judges Alex Kozinski (author), Ferdinand F. Fernandez, and Pamela Ann Rymer (the latter two of whom presided over a number of district court trials prosecuted by plaintiffs' counsel herein) (all three of whom remained close professional friends of plaintiffs' counsel after his criminal conviction): "[C]ounsel, Stephen Yagman, has a formidable reputation as a plaintiff's advocate in police misconduct cases; defendants in such cases may find it advantageous to remove him as an opponent." *County of Los Angeles v. U.S. Dist. Ct. (Forsyth v. Block)*, 223 F.3d 990 (9th Cir. 2000). Of course, counsel for defendants, City of Santa Barbara officials, would like to have someone other than Yagman + Reichmann, LLP and Stephen Yagman as their opponent. ("Please, anyone but him!)

Defense counsel only alleged, straight-faced, but convoluted basis for their challenge is that *defendants* would have a right to the speedy disposition of any of their interlocutory appeals to the Ninth Circuit, and that, somehow, Yagman + Reichmann, LLP and Stephen Yagman and Joe Reichmann would stand in the way of that, because Mr. Yagman is not admitted to practice in the Ninth Circuit. But such is not the case. As set forth in the declarations of Joseph Reichmann and Stephen Yagman, both attached hereto.

There are, at least, two other attorneys who, if Judge Reichmann were not to argue any appeal before the Ninth Circuit, would do so: Marion R. Yagman and Prof. Frances E. Olson. Yagman Decl. There is no basis for defendants' challenge to the adequacy of proposed class counsel. Notably, Judge Carter appointed the firm, as well as Mr. Yagman, as class counsel.

The certification motion should be reported and recommended to be granted, for the same reasons as the first certification in *People of the City of Los Angeles Who Are Unhoused v. Garcetti*, 2024 WL 3823235.

of the Class is proper, although the Court makes some modifications to Plaintiffs' request.

**A. The Proposed Class is Sufficiently Numerous**

**1. Legal Standard**

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no bright-line numerical cutoff, and other factors can be taken into consideration, courts generally find that numerosity obtains when a class has forty or more members and fails when there are twenty-one or fewer members. *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Courts may find that a class is numerous without knowing its exact size or membership, *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)), and courts "may make common sense assumptions to support a finding that joinder would be impracticable," *Californians for Disability Rights*, 249 F.R.D. at 347 (citing 1 Newberg on Class Actions, § 3:3).

**2. Discussion**

The Court finds that the proposed Class is sufficiently numerous. Plaintiffs estimate that the class consists of 1,000 to 3,000 individuals who have been subject to enforcement under the challenged ordinances. Mot. at 15. Plaintiffs argue that they have met the burden to establish numerosity as to the classes they propose, as the statistics they include show tens of thousands of unhoused individuals reside in Los Angeles. Mot. at 3. While the proposed class no longer consists of all unhoused individuals in Los Angeles, the Court finds it reasonable to accept Plaintiffs' inference that at least a small percentage of that total number of unhoused individuals have been subject to the challenged ordinances. The statistics that Plaintiffs provide on the number of unhoused individuals in Los Angeles are sufficient to establish that the proposed class is numerous, and that joinder would be impracticable. The Court accordingly finds that the numerosity requirement is satisfied. Plaintiffs, however, do not present any specific numbers as to their proposed subclasses, so the Court will only address the proposed Class.

**B. The Proposed Classes Present Common Questions of Law and Fact and Plaintiffs' Claims Are Typical of the Proposed Class**

**1. Legal Standard**

Rule 23(a)(2) requires courts to perform a "rigorous analysis" to determine whether "there are questions of law or fact common to the class." *See Wal-Mart*, 564 U.S. at 350-51. Commonality obtains when the class members' claims "depend upon a common contention ... of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Put differently: "What matters to class certification ... is not

the raising of common 'questions' ... but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (first omission in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

***4** The moving party need not show, however, that "every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News*, 737 F.3d 538 (9th Cir. 2013) (quoting *Wal-Mart*, 564 U.S. at 359).

As to typicality, a class representative's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement ensures "that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The typicality inquiry turns on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Representative claims must be "reasonably co-extensive with those of absent class members," but "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

**2. Discussion**

Here, the proposed Class satisfies the commonality and typicality requirements. As the Court understands Plaintiffs' briefing, Plaintiffs assert that all class members have been subject to enforcement under the challenged ordinances and that Defendants' manner of enforcement of those ordinances is unconstitutional. *See* Mot. at 6-8. Plaintiffs therefore challenge a policy and practice carried out by Defendants.

Defendants argue in opposition that Plaintiffs have not met their burden to establish commonality because Plaintiffs' "claims turn on the enforcement of municipal ordinances against unhoused individuals, and the constitutionality of that enforcement depends on the manner of the particular enforcement and the circumstances of the particular individual." Opp'n at 12. Plaintiffs assert, however, that the claims of absent class members are identical to those of the named Plaintiffs. Mot. at 7-8. Plaintiffs allege that in enforcing the ordinances against them, Defendants fail to follow notice procedures as required by the ordinances. Dkt. 324 ¶ 30. This is sufficient to establish a policy or practice affecting all members of the class for the purpose of class certification. "[P]olicies and practices are the "glue" that holds together the putative class and the putative subclass; either each of the policies and practices is unlawful as to every [class member] or it is not." *Parsons v. Ryan*, 754 F.3d 657, 658 (9th Cir. 2014).

Contrary to Defendants' contentions, whether Defendants have a policy and practice of

enforcing the challenged ordinances in an unconstitutional manner is a question that can "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores*, 564 U.S. at 350. Furthermore, "individual factual differences among the individual litigants or groups of litigants" do "not preclude a finding of commonality." *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005).

***5** As Plaintiffs have demonstrated the existence of questions capable of classwide resolution and Defendants' objections are unavailing, the Rule 23(a)(2) commonality requirement is satisfied.

As to typicality, for the same reasons discussed in the context of commonality, Plaintiffs have adequately demonstrated that they share a common injury with members of the Class. Plaintiffs allege that, like the named Plaintiffs, each class members' property was confiscated in an unconstitutional manner. Mot. at 7-8; Reply at 12-13. Defendants again point to individual factual differences between plaintiffs, Opp'n at 13-14, but these relatively minor individual differences similarly do not preclude a finding of typicality. The Court finds that the Rule 23(a)(3) typicality requirement is satisfied.

### C. Plaintiffs and Plaintiffs' Counsel Will Fairly and Adequately Represent the Proposed Class

Plaintiffs argues that the proposed class representatives and their counsel adequately represent the proposed classes as their representation would not be compromised by any conflicts of interest and they will vigorously prosecute the action on behalf of the class. Mot. at 13-14. Defendants do not challenge the adequacy prong. *See generally* Opp'n.

#### 1. Legal Standard

Representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the Ninth Circuit, this inquiry requires a court to answer two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

#### 2. Discussion

Courts in this district, and many others, have found that a failure to address an argument in opposition briefing constitutes a concession of that argument. *See, e.g., Johnson v. Macy*, 145 F. Supp. 3d 907, 918 (C.D. Cal. 2015) (citing *Tatum v. Schwartz*, No. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007), for the proposition that the plaintiff "tacitly concedes this claim by failing to address defendants' argument in her opposition"); *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that

argument as conceded."). The Court thus finds that Defendants have conceded that Plaintiffs' named plaintiffs' and counsel would adequately represent the proposed class.

In its own analysis, moreover, the Court agrees that Plaintiffs' named representatives and counsel would be fair and adequate representatives. None of the named plaintiffs or proposed class counsel appear to have any conflict of interest. The Court also finds that Plaintiffs' counsel will vigorously prosecute this case. The Court therefore finds that the adequacy requirement of Rule 23(a)(4) is satisfied as to Plaintiffs' proposed representatives and counsel. The Court, however, notes that Plaintiffs Finley and Lockett's claims were dismissed from this suit. Accordingly, only Plaintiffs Jacobs and Serin are approved as class representatives.

**D. The Proposed Class Does Meet the Requirements of Rule 23(b)(3)**

***6** Plaintiffs seek certification of "a damages class under Rule 23(b)(3)." Mot. at 11. Under this rule, class certification is appropriate if common questions of law or fact "predominate over any questions affecting only individual members," and if a class action offers a superior method of resolving the dispute. Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of showing that these requirements are met. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). Plaintiffs must also demonstrate that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). This requires plaintiffs to present a damages model consistent with their theory of liability. *Id.* at 35. While "[c]alculations need not be exact," the model must measure only those damages attributable to plaintiffs' theory of liability. *Id.*

Plaintiffs argue that they have met these requirements because the injuries of Class members are "virtually identical." Mot. at 13. Defendants argue that Plaintiffs fail to show both predominance and superiority. Opp'n at 14-16. The Court agrees with Defendants that Plaintiffs have failed to establish predominance.

Plaintiffs do not establish that they meet the predominance requirement, as they do not articulate how their injuries could be measured on a classwide basis. *See Mot.* at 14-16. Where, as here, the damages Plaintiffs assert relate to the loss of their personal property, the Court cannot simply assume that each individual's damages are identical. As Plaintiffs provide no damages model, the Court cannot reasonably assess whether damages are capable of measurement on a classwide basis. Therefore, Plaintiffs have failed to meet the requirements to certify a damages class under Rule 23(b)(3).

**E. The Proposed Class Meets the Requirements of Rule 23(b)(2)**

Plaintiffs seek certification of an injunctive relief class under either Rule 23(b)(1) or Rule 23(b)(2), but only present argument on the requirements of Rule 23(b)(2). The Court therefore only addresses whether Plaintiffs have met the Requirements of Rule 23(b)(2).

### 1. Legal Standard

As noted above, a class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(2) is only appropriate "when a single injunction or declaratory judgment would provide relief to each member of the class," and should not be granted if "each individual class member would be entitled to a *different* injunction or declaratory judgment." *Wal-Mart*, 564 U.S. at 360.

### 2. Discussion

As discussed throughout this Order, Plaintiffs seek classwide resolution of Defendants' alleged policy of unconstitutional enforcement of the challenged ordinances. Rule 23(b)(2) is "unquestionably satisfied" where "members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019). Here, the policies and practices that Plaintiffs identify are Defendants' alleged unconstitutional enforcement of ordinances that result in deprivation of their property that they either lose for good or must travel long distances to retrieve. Because injunctive and declaratory relief could be awarded on a unified, classwide basis, the proposed Class be certified under Rule 23(b)(2) as to these remedies.

## F. Plaintiffs' Counsel Meets the Standard for Appointment Under Rule 23(g)

Having now found that class certification is warranted, the Court must also appoint class counsel. *See* Fed. R. Civ. P. 23(g)(1). The Court finds Plaintiffs' counsel qualified to fulfill the duty of class counsel to "fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(4).

*7 Defendants do not oppose the appointment of Plaintiffs' counsel as class counsel, *see generally* Opp'n, and as such have conceded that Plaintiffs' counsel is adequate under Rule 23(g), *see, e.g., Day*, 191 F. Supp. 2d at 159. The Court agrees that Plaintiffs' counsel is qualified to serve as class counsel under Rule 23(g), as Yagman and Reichmann LLP has demonstrated the ability, resources, and motivation to vigorously pursue the current case on behalf of the Class.

## IV. Disposition

For the reasons set forth above, the Court GRANTS IN PART Plaintiffs' Motion to Certify Class. The Court CERTIFIES the Class to pursue class claims under Rule 23(b)(2), APPOINTS Plaintiffs Jacobs and Serin as Class Representatives for the Proposed Class, and APPOINTS Yagman and Reichmann LLP as Class Counsel for the Proposed Class. The Court DENIES Plaintiffs' motion for certification as a damages class under Rule 23(b)(3).

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

The Clerk shall serve this minute order on the parties.

Initials of Deputy Clerk: kdu

**All Citations**

Slip Copy, 2024 WL 3823235

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**DECLARATION OF JOSEPH REICHMANN**

I, JOSEPH REICHMANN, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am a principal of the law firm of Yagman + Reichmann, LLP, that was formed in July 2021, and before that was a principal in Yagman & Reichmann, P.C., from Nov. 2, 1999 to July 2021, and I am one of the attorneys for the plaintiff in this action. Our firm website accurately sets forth my legal qualifications: I have practiced law for 65 years, and from 1980 to 1996 was a Magistrate Judge of this court.

2. Yagman + Reichmann, LLP maintains a website at yagmanlaw.net: it is *not*, as defense counsel states, "Mr. Yagman's website." Opp. at 19-20. I was surprised to learn that my address with the California Bar is not the office address, and that is because after I retired from the federal bench in 1996, I neglected to change my address with the Bar.

2. I regularly work with Stephen Yagman, mostly consulting with him about strategies and doing appeals. He often does first drafts of appellate briefs, which I then review and submit. I have co-counseled with Stephen and Marion R. Yagman in both state and federal trials and have co-counseled with him on appeals.The reason that I joined Stephen's law firm in 1999 was that I thought that he was the best civil rights lawyer in Los Angeles. Stephen always has been and is ready to defend the defenseless, as are the plaintiffs in this action. All of my work with Yagman + Reichmann, LLP always has been done *pro bono publico*.

3. I am ready, willing, and able to prosecute or to defend any appeals in this action, or any other action in which the firm might be involved.

4. I was the plaintiffs' appellate counsel in *Finley v. Garcetti*, 2:21-cv-06003-DOC(KESx) and I decided to dismiss that appeal by not filing an opening

brief because I believed that there was little chance of prevailing. I did not "fail" to file an opening brief, as defense counsel contends, but instead chose the best way to terminate that appeal was to do nothing, so that the court simply would dismiss the appeal, which is what happened.

JOSEPH REICHMANN 08/20/24


(/)

APPLY (/ADMISSIONS) GIVE (HTTPS://GIVING.U



# Frances Elisabeth Olsen

*Professor of Law*

## Contact

UCLA School of Law 385 Charles E. Young Dr. East Los Angeles,

Faculty & Research (/faculty) > Faculty Profiles (/faculty/faculty-profiles) > Frances Elisabeth Olsen

*B.A. Goddard College, 1968*

*J.D. University of Colorado, 1971*

*S.J.D. Harvard, 1984*

*UCLA Faculty Since 1984*

CA, 90095

olsen@law.ucla.edu (mailto:olsen@law.ucla.edu)

Frances Olsen teaches *Feminist Legal Theory, Dissidence & Law, Family Law,* and *Torts.* Her areas of research interest include legal theory, social change and feminism.

During law school, Professor Olsen did legal aid work for migrant farm workers in Colorado and was the notes & comments editor of the *University of Colorado Law Review.* She then clerked for the chief judge of the U.S. District Court in Colorado. She represented Native Americans at Wounded Knee in 1973. She established the first feminist public interest law firm in Denver, and, from 1981 to 1983 while an S.J.D. student, founded a legal academic women's group, the Fem-Crits, which spread across the country. She has taught courses in feminist legal theory at Harvard, Oxford, Cambridge, Berlin, Frankfurt, Tokyo, Jerusalem, and at other universities in the U.S., France, Italy, Japan, and Israel. She was a fellow at Oxford University in 1987 and holds a Life Fellowship at Churchill College, Cambridge University. She has lectured throughout the world.

Professor Olsen has edited *Feminist Legal Theory I: Foundations and Outlooks* and *II: Positioning Feminist Theory Within the Law* (1995). In addition to writing some 100 articles published world-wide, including in the *Harvard Law Review* and *Yale Law Journal,* she co-authored *Cases and Materials on Family Law: Legal Concepts and Changing Human Relationships* (with Weyrauch and Katz, 1994).

# Bibliography

+ ***BOOKS***

+ ***ARTICLES AND CHAPTERS***

+ ***OTHER***

# Courses Available

**LAW 376**

Law and Dissent

→

**LAW 613**

The Criminal (In)Justice System

→

**LAW 655**

**LAW 312**

Yagman + Reichmann, LLP (https://yagmanlaw.net/)

ABOUT US

# WHO WE ARE

**We are federal civil rights lawyers, who also handle other types of civil cases, habeas corpus, and criminal law matters.**

**We protect the rights of those abused by police brutality, excessive force and unlawful searches and seizures, and people in prisons.**

**Potential clients may find the application here (http://yagmanlaw.net/application.html).**

**50 YEARS!**

**Still . . . after all these years.**

"Stephen Yagman has entered a field of law that's difficult. He is always the underdog, and he is facing the establishment at its fiercest. So, anyone who gets into that arena is brave and has a mission."
United States District Judge Stephen V. Wilson (2007).

"Stephen Yagman has been known for creating issues, tension, and using his position as an attorney to wreak havoc on many [police officers' and government officials'] lives . . . ."
Los Angeles City Attorney's Office (2022).

Yagman + Reichmann, LLP (https://yagmanlaw.net/)

# Joe Reichmann

BAR ADMISSIONS:

Admitted to bars: California; U.S. Supreme Court; U.S. Court of Appeals for the Ninth Circuit; U.S. District Court for the Central District of California.

EDUCATION:

UCLA School of Law: J.D., 1959.
University of California at Los Angeles: B.S. business administration, accounting major, 1953

REPRESENTATIVE AREAS OF PRACTICE:

Mr. Reichmann has had extensive experience in the area of criminal law, including serving as a deputy district attorney in Los Angeles County, California, from 1960 to 1970. Mr. Reichmann was appointed to the Federal Indigent Defense Panel in 1970 and, for the 10 year period from 1970 to 1980, Mr. Reichmann practiced criminal defense. From 1970 to 1980, Mr. Reichmann was exclusively engaged in the practice of criminal law both in the California State courts and in the United States District Court for the Central District of California. Mr. Reichmann has extensive appellate experience, representing criminal defendants both in the California State appellate court system and before the Ninth Circuit Court of Appeals, and, during that 10 year period, filed at least 50 appeals on behalf of criminal defendants. On occasion, Mr. Reichmann's appellate experience has included the filing of petitions for writs of certiorari to the United States Supreme Court.

From 1980 to 1996, Mr. Reichmann was a highly respected United States Magistrate Judge for

Yagman + Reichmann, LLP (https://yagmanlaw.net/)

ichmann's extensive

nd court trials of Section

nmendations in habeas

corpus cases. During his tenure as Magistrate Judge, Mr. Reichmann also conducted numerous settlement conferences in Section 1983 cases, as well as in a vast array of complex tort and class action cases.

In 1999 Mr. Reichmann joined the law firm of Yagman & Yagman & Reichmann, to which he has brought his invaluable experience as a former Magistrate Judge, as a seasoned criminal attorney, and in federal civil rights.

TEACHING EXPERIENCE:

1997-1998: Adjunct Professor, University of West Los Angeles School of Law:
taught class on 42 U.S.C. § 1983 and Bivens civil rights law.


Yagman + Reichmann, LLP
(https://yagmanlaw.net/)
whose photograph and signature appear hereon is duly appointed
SPECIAL DEPUTY PROSECUTING ATTORNEY
under the power and authority of the Boundary County ProsecutingAttorney.
003
STEPHEN YAGMAN
STEPHEN YAGMAN
BOUNDARY COUNTY
GREAT SEAL OF THE STATE OF IDAHO
PROSECUTOR

Los Angeles Times JUNE 28, 1998

Yagman + Reichmann, LLP (https://yagmanlaw.net/)

THE BEST OF SOCAL

# ONE ANGRY MAN

Is Attorney Stephen Yagman A Righteous Opponent of Governmental Abuse–Or a Bully Out to Make a Buck? BY HECTOR TOBAR

GROWING UP BICULTURAL: WAS HE ANGLO OR LATINO? • FASHION: EASY DOES IT
VERY FIRST PERSON: HER NEW FRIEND, THE NUDIST • HOME: FOR ART'S SAKE

Yagman + Reichmann, LLP (https://yagmanlaw.net/)

# COP CRUNCHER




Book 'em, Dan-o: Yagman hams it up in a mock mug shot

## Hated by the LAPD and hounded by the legal establishment, defiant civil-rights lawyer Stephen Yagman may have finally outdone himself

## BY RON RUSSELL

Stephen Yagman is lying on the floor in a busy courthouse corridor, oblivious to the stares of bemused passersby. He is nursing a backache and explaining his Jimmy Buffett theory of jury selection, which holds that fans of the boozy-voiced singer are more receptive to claims of police brutality because they themselves are more likely to have been pushed around by cops.

The case that has brought him to court has not one but two Buffett jurors, a fact the meticulous Yagman has ferreted out during pretrial questioning. But despite a rousing closing argument, the L.A. lawyer whom the cops most love to hate doesn't expect to win.

He is pursuing a lawsuit against five California Highway Patrol officers. They have shot and killed an unarmed 17-year-old high school student named Dennis Rippey Jr. at the end of a high-speed chase near Riverside. There were no drugs or alcohol in the boy's system. Besides driving his dad's car recklessly, he was guilty of little more than teen-aged stupidity. For reasons no one will ever know, Rippey hadn't obeyed orders to get down on the ground after he got out of the car. The patrolmen who blew him away testified they opened fire after concluding—wrongly—that he was reaching for a weapon.

"Any time you have cops claiming to act out of fear of dying," says Yagman, getting off the floor and dusting off his suit, "jurors are more likely to say, 'Fuck you and the horse you rode in on.'" And this time is no different. After deliberating for two days, the jury exonerates the officers. But for the civil-rights crusader whose public persona, not to mention legal career, is synonymous with battling the police, it's hardly a wipeout. The glum-faced cops have escaped having to pay big penalties, but for a month they've had to sit in a federal courtroom—tense and fidgety and right across the aisle from two grieving parents—and endure Yagman's relentless dissection of a tragedy each would rather forget.



Yagman + Reichmann, LLP (https://yagmanlaw.net/)

Reader

COMPLETE Arts & ENTERTAINMENT GUIDE

Rodney King Was Lucky, Says Attorney Steven Yagman — He Lived.

The L.A.P.D. 'DEATH SQUAD' Case

By Kit Roane