1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11   DAVID JACOBS on behalf of the            Case No. 2:22-cv-08010-DOC-KESx
     unhoused people of Los Angeles,
12
          Plaintiffs,
13                                             REPORT AND RECOMMENDATION
          v.                                   OF U.S. MAGISTRATE JUDGE
14
     ERIC MICHAEL GARCETTI, et al.,
15
          Defendants.
16
17
18        This Report and Recommendation ("R&R") addressing Plaintiff's Motion to

19   Certify Class (Dkt. 82) is submitted to the Honorable David O. Carter, United

20   States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General

21   Order 05-07 of the United States District Court for the Central District of

22   California, who referred it to the magistrate judge.  (Dkt. 84.)

23        The magistrate judge finds the matter appropriate for resolution without oral

24   argument and **orders the September 9, 2024 hearing off calendar**.  Fed. R. Civ.

25   P. 78; C.D. Cal. L.R. 7–15.  Having reviewed the briefing submitted by the parties

26   (Dkt. 82 (motion), 86 (opposition), 88 (reply), 91 (Plaintiff's Fed. R. App. P. 28(j)

27
28

                                    1

submission[1])), the magistrate judge recommends that Plaintiff's motion for class certification be DENIED.[2]

**I.    Background.**

The operative complaint is the First Amended Complaint ("FAC").  (Dkt. 41.)  Plaintiff David Jacobs ("Plaintiff") bring this action on behalf of himself and a proposed class of unhoused persons residing in the City of Los Angeles ("City"). (Id. ¶¶ 3, 273.)  The FAC challenges the constitutionality of Los Angeles Municipal Code ("LAMC") § 41.18.  (Id. ¶ 6 (alleging the full text of the challenged ordinance).)  LAMC § 41.18 prohibits, among other things, obstructing a sidewalk by sitting, lying, sleeping, or storing personal property (1) in a manner that impedes access for the disabled, (2) within 10 feet of a loading dock or driveway; (3) within 5 feet of a building entrance or exit; (4) within 2 feet of a fire hydrant, or (5) in a manner that blocks a bike path.  It also prohibits sitting, lying, sleeping, or storing personal property on a public street or sidewalk (1) within 500 feet of a park, library, school, or daycare center; (2) within 500 feet of certain transportation infrastructure, and (3) within 1,000 feet of a homeless shelter.  (Id.) Certain prohibitions in the ordinance can only be enforced in areas designated by a City Council resolution and identified by posted signs.  (Id. at 7.)

Plaintiff alleges that in October 2022, he was issued a citation under LAMC § 41.18 for living on a sidewalk in Venice.  (Id. ¶ 35.)  In 2021, his tent and all of

---

[1] Plaintiff cites this appellate rule "by analogy" to identify a newly decided case, Lytle v. Nutramax Laboratories, Inc., 2024 WL 3915361 (9th Cir. Aug. 23, 2024).  Plaintiff cites this case "for the proposition that no damages model is required in order for a class to be certified."  (Dkt. 91 at 1.)

[2] Plaintiff submitted a "supplement" to his class certification motion attaching a newspaper article.  (Dkt. 85.)  The Court did not consider this because it is hearsay.  Larez v. Los Angeles, 946 F.2d 630, 642 (9th Cir. 1991) (newspaper articles are generally inadmissible hearsay if offered to prove the truth of their content).

his personal belongings were "stolen under the supervision of defendant Contreras, pursuant to § 41.18." (<u>Id</u>. ¶ 36.)

The FAC alleges 42 U.S.C. § 1983 claims for (1) deprivation of equal protection, (2) deprivation of due process, (3) abridgement of privileges and immunities, (4) imposition of cruel and unusual punishment, (5) imposition of excessive fines, and (6) unreasonable seizure. (Dkt. 41.) For each of these constitutional claims, there are related claims for conspiracy and municipal liability under <u>Monell v. Dep't of Soc. Svcs. of the City of New York</u>, 436 U.S. 657 (1978). (<u>Id.</u>)

As explained below, Plaintiff has not demonstrated that certification is warranted under Rule 23(a). This makes it unnecessary to consider Rule 23(b).

## II.    Legal Standard.

Courts may certify a class action only if it satisfies all four requirements identified in Federal Rule of Civil Procedure 23(a). <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997). Rule 23(a) requires the moving party to show the following:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

<u>See</u> Fed. R. Civ. P. 23(a). These requirements are often referred to as "numerosity," "commonality," "typicality," and "adequacy." <u>United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.</u>, 593 F.3d 802, 806 (9th Cir. 2010).

In addition to the four prerequisites under Rule 23(a), the moving party must

also demonstrate that at least one of the requirements of Rule 23(b) is satisfied. Fed. R. Civ. P. 23(b). Here, Plaintiff moves for certification under all three Rule 23(b) categories. Plaintiff seeks certification for a damages class under Rule 23(b)(3) and for an injunctive relief class under either Rule 23(b)(1) or Rule 23(b)(2). (Dkt. 82 at 20.[3])

A class action may be maintained under Rule 23(b)(1) if "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). It may be maintained under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, it may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010). However, "Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). A party seeking class certification must affirmatively demonstrate compliance with Rule

---

[3] Citations refer to the pagination imposed by the Court's e-filing system.

23—that is, the party "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Id.

A court that certifies a class generally must also appoint class counsel. Fed. R. Civ. P. 23(g)(1). Class counsel have a duty to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). When deciding whether class counsel is adequate to carry out this duty, courts must consider four factors:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Courts may also consider any other information relevant to "counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); see Kandel v. Brother Int'l Corp., 264 F.R.D. 630, 634 (C.D. Cal. 2010) (finding proposed class counsel inadequate due to "errors and deficiencies in representation" that "ran a high risk of prejudicing the absent class members").

**III.    Discussion.**

**A.    The Class Definition.**

In his "Amended Motion for Class Certification," Plaintiff proposes the following class definition: "un-housed people, all of whom have suffered identical injuries, by enforcement of § 41.18." (Dkt. 82 at 7 ("Definition 1").) Later in the same motion, Plaintiff modifies the class definition to: "All un-housed persons who reside in the City of Los Angeles and who have been subjected to City of Los Angeles ordinance § 41.18." (Id. at 23 ("Definition 2").) In his proposed order, Plaintiff proposes yet a third class definition, having nothing to do with the challenged ordinance: "All un-housed persons who reside in the City of Los

Angeles and whose property and/or belongings have been subjected to and confiscated pursuant to City of Los Angeles ordinances §§56.11 and/or 56.12, and who have suffered the same injuries of having had their property and/or belongings taken, and who have been required to travel long distances across Los Angeles to retrieve their seized belongings, and who (A) have traveled long distances and retrieved their belongings, or (B) have not been able to travel those long distances and who thereby have lost their belongings." (Dkt. 82-1 at 13-14 ("Definition 3").[4])

Defendants pointed out this inconsistency in the opposition. (Dkt. 86 at 10.) Plaintiff did not address it in his reply. (Dkt. 88.)

Plaintiff's counsel, however, says, "The only difference between the classes sought to be certified in <u>Finley v. Garcetti</u>, 2:21-06003-DOC(KESx), and the instant action is that in <u>Finley</u> City of Los Angeles ordinances § 56.11 and 56.12 are challenged, and in the instant action ordinance § 41.18 is challenged." (Dkt. 82 at 1.) As a result, Definition 3 in the proposed order appears to be a "cut and paste" error. The Court construes Plaintiff's motion to be seeking to certify a class defined by Definition 2, as follows:

All un-housed persons who reside in the City of Los Angeles and who have been subjected to City of Los Angeles ordinance § 41.18.

(Dkt. 82 at 23; 82-1 at 18.) David Jacobs is the proposed class representative. (<u>Id.</u>)

### a. "Unhoused Persons"

The class certification motion does not define "unhoused persons." In the FAC, Plaintiff alleges that "unhoused persons" are everyone who meets the

---

[4] Plaintiff's counsel submitted two proposed orders. Definition 3 comes from the order he wrote. The second proposed order, copied from <u>Finley</u>, uses Definition 2. (Dkt. 82-1 at 18.)

definition of a "homeless person" in 42 U.S.C. § 11302(a). (FAC at 3-4, n.2.) That definition includes persons living in temporary shelters, persons in rental housing at imminent risk of eviction, and persons living in a hotel or motel but without sufficient funds to reside there long term. (Id.) The Court assumes Plaintiff intends to use this definition for purposes of the instant certification motion.

### b. "Subjected to"

Defendants object that it is unclear what "subjected to" LAMC § 41.18 means. (Dkt. 86 at 11.) Without clarity, the proposed class cannot be identified. See Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009) (denying class certification because an ambiguous term in the proposed class definition made "no reference to objective criteria" and meant that "the class members themselves might not know if they were members of the class").

The Court agrees that "subjected to" is too ambiguous. It could conceivably include seeing a posted sign giving notice of an enforcement zone, as required before some subsections of LAMC § 41.18 can be enforced. District courts, however, can amend proposed class definitions to reduce ambiguity. The magistrate judge, therefore, amends the proposed class definition, as follows:

> All unhoused persons who reside in the City of Los Angeles (1) who have been cited for violating LAMC § 41.18 or (2) whose personal belongings were taken by City personnel enforcing LAMC § 41.18.

This amendment reflects the two ways in which Plaintiff Jacobs alleges he was injured by the City's enforcement of LAMC § 41.18.

### B. Numerosity.

#### 1. Legal Standard.

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no bright-line numerical cutoff, and other factors can be taken into consideration, courts generally find that numerosity

obtains when a class has forty or more members and fails when there are twenty-one or fewer members.  <u>Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.</u>, 249 F.R.D. 334, 346 (N.D. Cal. 2008) (citing <u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995)).  Courts may find that a class is numerous without knowing its exact size or membership, <u>Cervantez v. Celestica Corp.</u>, 253 F.R.D. 562, 569 (C.D. Cal. 2008) (citing <u>Robidoux v. Celani</u>, 987 F.2d 931, 935 (2d Cir. 1993)), and courts "may make common sense assumptions to support a finding that joinder would be impracticable," <u>Californians for Disability Rights</u>, 249 F.R.D. at 347 (citing 1 Newberg on Class Actions, § 3:3).

### 2.    Discussion.

To meet the amended proposed class definition, a person must (1) be unhoused, (2) reside in the City, and (3) have been cited or had their belongings seized by City personnel enforcing LAMC § 41.18.

Plaintiff did not submit any evidence with his class certification motion. (Dkt. 82.)  He puts statistics in his brief (without citing a source) and concludes, "the number of class members in this action would be about 42,000."  (Dkt. 82 at 3.)  Plaintiff seems to concede that this is just a count of the number of unhoused people in Los Angeles without considering whether they were ever "subjected to" LAMC § 41.18.  (<u>Id.</u> at 14 ("there are many thousands of unhoused persons in the City of Los Angeles" and "Joinder of all these individuals clearly is impracticable").)

On the one hand, it is Plaintiff's burden to submit evidence demonstrating that each subpart of Rule 23(a) is satisfied.  (Dkt. 86 at 13.)  Plaintiff alleges a broad definition of unhoused persons.  (FAC ¶ 6.)  There is no reason to think that a large percentage of persons (if any) living in hotels or precarious rental housing are likely to have been cited for sleeping or storing personal property on the sidewalk.

On the other hand, if there are 42,000 unhoused persons in Los Angeles,

then it may be a fair inference that a large percentage live outside, and of those, at least 40 have been cited for violating LAMC § 41.18.  The Court was willing to make that inference in <u>Finley</u>.  (<u>See</u> case no. 2:21-cv-06003, Dkt. 365 at 4-5.)  Neither party has identified a material factual difference between this case and <u>Finley</u> that would make such an inference less supportable here.  Relying on <u>Finley</u>, therefore, this R&R will recommend finding that the proposed class (per the amended definition) is numerous.

### C.    Commonality and Typicality.

#### 1.    Legal Standard.

Rule 23(a)(2) requires courts to perform a "rigorous analysis" to determine whether "there are questions of law or fact common to the class."  <u>See</u> <u>Wal-Mart</u>, 564 U.S. at 350-51.  Commonality obtains when the class members' claims "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  <u>Id</u>. at 350.  Put differently: "What matters to class certification . . . is not the raising of common 'questions' . . . but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  <u>Id.</u> (first omission in original) (quoting Richard A. Nagareda, <u>Class Certification in the Age of Aggregate Proof</u>, 84 N.Y.U. L. Rev. 97, 132 (2009)).

The moving party need not show, however, that "every question in the case, or even a preponderance of questions, is capable of classwide resolution.  So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  <u>Wang v. Chinese Daily News</u>, 737 F.3d 538 (9th Cir. 2013) (quoting <u>Wal-Mart</u>, 564 U.S. at 359).

As to typicality, a class representative's claims or defenses must be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This requirement ensures "that the interest of the named representative aligns with the interests of

the class." <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992). The typicality inquiry turns on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." <u>Id.</u> (quoting <u>Schwartz v. Harp</u>, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Representative claims must be "reasonably co-extensive with those of absent class members," but "need not be substantially identical." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1020 (9th Cir. 1998), abrogated on other grounds by <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338 (2011).

### 2. Discussion.

The Court has amended the proposed class definition, limiting the class to unhoused persons who experienced the same kinds of allegedly unlawful enforcement activities as the named Plaintiff. Based on the amended class definition, the Court finds that Plaintiff seeks to represent a class with common injuries, and those injuries are typical of his own. This satisfies Rule 23(a)(2) (commonality) and Rule 23(a)(3) (typicality).

### D. Adequate Representation.

Plaintiff argues that the proposed class representative and proposed class counsel will adequately represent the class. They will not be compromised by any conflicts of interest and will vigorously prosecute the action on behalf of the entire class. (Dkt. 82 at 17-18.)

### 1. Legal Standard.

Representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the Ninth Circuit, this inquiry requires a court to answer two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 985 (9th Cir. 2011)

(quoting <u>Hanlon</u>, 150 F.3d at 1020).

An attorney must be more than zealous and unconflicted to represent a class. Class counsel must also be competent. "All lawyers make mistakes and perfection is not the standard for Rule 23(a)(4)." <u>Kandel v. Brother Int'l Corp.</u>, 264 F.R.D. 630, 635 (C.D. Cal. 2010). But "the Court has a responsibility to protect the due process rights of the absent class members and to deny the appointment of class counsel who cannot be relied on to prosecute the class's claims in a competent manner." <u>Id</u>. Indeed, the Court has an affirmative obligation to protect the absent class members. <u>See</u> <u>Silber v. Mabon</u>, 957 F.2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent class members.").

### 2. Discussion.

• <u>Proposed Representative</u>: Defendants object that the named Plaintiff has not demonstrated that he can "fairly and adequately protect the interests of the class." (Dkt. 86 at 6.) He has not, for example, submitted a declaration attesting to his willingness to represent the class, his ability to participate in the litigation, and his means for receiving notice and communicating with class counsel. He has not described the other lawsuits in which he is a plaintiff, what (if anything) he did to assist counsel in those matters, whether he has been deposed, etc.

"The class representative's duties include supervising counsel, controlling and directing prosecution of the action, and evaluating settlement opportunities." <u>Plumlee v. Pfizer, Inc.</u>, No. 5:13-cv-0414-LHK-PSG, 2014 U.S. Dist. LEXIS 121430, at *7 (N.D. Cal. Aug. 29, 2014) (authorizing discovery to investigate proposed class representative's mental health after a doubt was raised). Plaintiff's briefing does not point to any evidence demonstrating that Plaintiff can adequately perform such duties. There is no evidence concerning Plaintiff's background and ability to participate in this litigation. There is no evidence that Plaintiff has access to email, a fax machine, or other means of communicating regularly with class

counsel.  There is no evidence that Plaintiff would be willing and able to travel to
Orange County for trial.  These important, practical considerations cannot be
"assumed away" given Plaintiff's allegations of his unhoused status.  It is
Plaintiff's duty to prove his qualifications with evidence, not Defendants' burden
to disprove unsupported assumptions.  For all these reasons, Plaintiff has failed to
carry his burden of demonstrating that he is an adequate class representative.

• Proposed Class Counsel:  Plaintiff points to Finley in which the Court
appointed Mr. Yagman as class counsel – but the Finley Defendants did not contest
the adequacy of class counsel in that case.  (See case no. 2:21-cv-06003-DOC-
KESx, Dkt. 365 at 6-7.)  In this case, Defendants argue that Mr. Yagman is not
adequate to represent the proposed class because of prior felony convictions,
including fraud. (Dkt. 86 at 16.)  As a result of these convictions, Mr. Yagman
remains ineligible to practice law before the Ninth Circuit.  (Id. at 16-17.)  This has
prejudiced Mr. Yagman's unhoused clients before.[5]  (See Finley v. Garcetti, case
no. 2:21-cv-06003-DOC-KES, Dkt. 244 (dismissing appeal for failure to file an
opening brief).)  Defendants also cite bar disciplinary actions imposed against Mr.
Yagman for misconduct against clients' interests.  (Dkt. 86 at16.)

In another case against the City of Santa Barbra in which Mr. Yagman is
seeking to be appointed class counsel, the defendants pointed out how Mr. Yagman
had made false statements and failed to follow court orders:

He has made intentional misrepresentations to this Court (e.g., Dkt.
173-1 at ¶ 10 ("Mr. Yagman falsely certified to the court that he had
met and conferred with Defendants' counsel")," and "he has failed
or refused to comply with this Court's orders (e.g., Dkt. 118

---

[5] In his reply, he points to other attorneys who could argue on behalf of the
class on appeal, if needed.  (Dkt. 88 at 3.)  He does not, however, provide
declarations from them or any information about their qualifications.  (Id.)

1  ("Plaintiffs now 'conceded that their operative, Fourth Amended

2  Complaint did not fully comply with the court's order dismissing,

3  with leave to amend, the Third Amended Complaint'))."

4  (See Boring v. Murillo, case no. 2:21-cv-07305-DOC-KES, Dkt. 178 at 20.)  On

5  one occasion in Boring, Mr. Yagman filed non-substantive opposition to a motion

6  to dismiss the entire action alleging that Defendants failed to meet and confer.

7  (Boring, Dkt. 124.)  When ordered to meet and confer, he insisted on doing so at

8  his home office.  When ordered to meet and confer at the courthouse, he failed to

9  appear and later failed to explain his "no show."  (Boring Dkt. 131, 135, 141 at 3.)

10     The Court does not doubt Mr. Yagman's zeal as an advocate for the

11  unhoused.  The Court, however, has concerns that missteps in this case and other

12  related cases reveal a risk of prejudice to the class.  For example, there have been

13  problems meeting discovery deadlines, created, in part, by confusion over

14  counsel's filing of apparently duplicative actions.  (Finley, Dkt. 386.)  Counsel

15  filed motions for a preliminary injunction without any evidence.  (Boring, Dkt. 79,

16  136; Jacobs, Dkt. 83.)  Even the instant class certification motion lacks relevant,

17  admissible supporting evidence.

18     Ultimately, counsel's difficulties following court orders, presenting

19  evidentiary support when required, and working with opposing counsel to

20  accomplish routine tasks like scheduling could prejudice the class.  When

21  combined with counsel's prior bar discipline, inability to appear at the Ninth

22  Circuit, and failure to provide evidence about the qualifications of proposed

23  appellate class counsel, this is enough to convince the Court that proposed class

24  counsel is not adequate to represent the class.

25  **IV.    Recommendation.**

26     For the reasons stated above, the Court finds that even with the modified

27  class definition, Plaintiff failed to carry his burden to satisfy Rule 23(a)(4)

28  (adequacy of the proposed representative party).  The Court further finds that

1  proposed class counsel does not meet the standard for appointment under Rule

2  23(a)(4) or Rule 23(g).

3         IT IS THEREFORE RECOMMENDED that the District Court issue an

4  Order: (1) approving and accepting this R&R; (2) denying Plaintiff's motion for

5  class certification.  (Dkt. 82.)

6

7  DATED:  September 4, 2024

8                                            KAREN E. SCOTT
                                             UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28